**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **FASIL TAKLETSADIK,**<br><br>***Petitioner*,**<br><br>**v.**<br><br>**ROBERT GUADIAN, *et al.*,**<br><br>***Respondents.*** | **Civ. No.: MJM-26-3148** |

**MEMORANDUM OPINION**

This matter is before the Court on petitioner Fasil Takletsadik's ("Takletsadik" or "Petitioner") Petition for Writ of Habeas Corpus, ECF No. 1 ("Pet."), and the Motion to Dismiss filed by respondents Robert Guadian, Field Office Director of Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations, Washington Field Office; Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); and Todd Blanche, United States Attorney General (collectively, "Respondents"), ECF No. 8. Upon review of the record and consideration of the parties' arguments, the Court will GRANT Takletsadik's Petition, ECF No. 1 and GRANT IN PART and DENY IN PART the Respondents' Motion to Dismiss, ECF No. 8.

## I. BACKGROUND

Petitioner Fasil Takletsadik is a native and citizen of Ethiopia who has lived in the United States since 1995. Pet. ¶¶ 18, 20. He is sixty-seven years old and has significant health issues, including severe diabetes, high blood pressure, and a spinal stenosis. *Id.* ¶¶ 31–32. He fled Ethiopia in 1979 due to political persecution and was granted asylum in Germany, where he worked on a U.S. military base for 16 years. *Id.* ¶ 19. Takletsadik came to the United States on a visitor visa and applied for asylum. *Id.* ¶¶ 20–21.

In 2004, an Immigration Judge ("IJ") found that Takletsadik was statutorily ineligible for asylum and ordered his removal from the United States. *Id.* ¶ 21. ICE detained Takletsadik in 2008. *Id.* In February 2009, Takletsadik filed a motion to reopen his removal proceedings based on changed circumstances, which was granted by the BIA. *Id.* He was released from ICE detention with an ankle monitor in July 2009, and, in 2012, he was granted withholding of removal to Ethiopia under 8 U.S.C. 1231(b)(3). *Id.* ¶¶ 22–23.

Before June 2025, Takletsadik was employed in the commissary of Andrews Air Force Base in Maryland. *Id.* ¶ 24. On June 25, 2025, however, he went to renew his base security pass, and the police officer on base called ICE. *Id.* ¶ 25. Takletsadik was taken into ICE custody, first detained in the ICE hold room in Baltimore, Maryland, and then taken to a detention center in Louisiana. *Id.* ¶¶ 25–26. At the time, ICE officials alleged that Takletsadik was potentially being processed for third country removal. *Id.* ¶ 26. After six months of detention, Takletsadik filed a Petition for Writ of Habeas Corpus in the U.S. District Court for the Western District of Louisiana. On June 30, 2026, the petition was granted under *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Id.* ¶ 27. *See also Takletsadik v. Patterson*, No. 3:26-CV-00517 SEC P, 2026 WL 1883948, at *4 (W.D. La. June 15, 2026), *report and recommendation adopted*, No. 3:26-CV-00517, 2026 WL 1882857 (W.D. La. June 30, 2026). Takletsadik was released from ICE detention on July 1, 2026, after over a year of ICE detention. ECF No. 1 ¶¶ 25, 28.

Only a month later, on August 10, 2026, an ICE officer called Takletsadik and told him that his ankle monitor was malfunctioning and that an ICE officer would come to his home to inspect it. *Id.* ¶ 29. This outreach turned out to be a ruse, however, and Takletsadik was taken back into ICE custody. *Id.* Respondents purportedly now intend to remove him to Cameroon based on that country's acceptance of Takletsadik for removal. ECF No. 8-1 at 9. Takletsadik has not received a screening interview for fear of removal to Cameroon, as Cameroon has

provided diplomatic assurances against persecution or torture. *Id.* at 9, 15. Takletsadik expresses fear of removal to any third country that may refoul him to Ethiopia or where he will not have access to the medical attention he needs. Pet. ¶ 30.

On August 10, 2026, Takletsadik filed a Petition for Writ of Habeas Corpus with this Court while he was detained in Baltimore, seeking immediate release from Respondents' custody. Pet. ¶ 9. He further requests that the Court enjoin the Respondents from removing him to Cameroon without certain procedural protections, including a fear screening and IJ review of any negative fear determination. *Id.* ¶ 95. He alleges multiple violations: (1) indefinite and prolonged detention, in violation of 8 U.S.C. § 1231(a)(6); (2) violations of procedural due process rights under the Fifth Amendment in the third country removal process; (3) violations of procedural due process rights under the Fifth Amendment in his re-detention without sufficient process; and (4) violations of the Fifth and Eighth Amendments in what he alleges is a punitive third country removal. *Id.* ¶¶ 89–102.

On August 20, 2026, Respondents filed a response to the Petition and Motion to Dismiss the Petition. ECF No. 8. Respondents argue that Takletsadik fails to state a claim for relief, that ICE has the lawful authority to detain and remove Takletsadik, that there is a significant likelihood of his removal in the reasonably foreseeable future, that he is not entitled to IJ review of the denial of a third country screening, and that the revocation of his release and re-detention comported with all regulatory authority. ECF No. 8-1 at 2, 12.[1] On August 27, 2026, Takletsadik filed a reply in support of his Petition and opposition to the Motion to Dismiss. ECF No. 9.

[1] In addition to the aforementioned arguments, Respondents also argue that the U.S. Attorney General is not a proper Respondent in this habeas action because he does not have immediate custody of Petitioner and cannot produce him. ECF No. 8-1 at 3. Petitioner does not respond to this argument, and the Court agrees with it. Accordingly, the U.S. Attorney General is dismissed from this action.

## II. DISCUSSION

### A. Standard of Review

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the U.S. Constitution or federal law. 28 U.S.C. § 2241(c)(3). If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief. 28 U.S.C. § 2243.

### B. Analysis

Takletsadik's Petition, in part, seeks certain procedural protections before removal to a third country under the Due Process Clause, as well as immediate release from immigration detention under 8 U.S.C. § 1231 and the Supreme Court's decision in *Zadvydas*. ECF No. 1 ¶¶ 7–8. Respondents dispute Petitioner's entitlement to this relief and further argue that the ongoing litigation in *D.V.D. v. DHS*, No. 25-cv-10676-BEM (D. Mass.), precludes Petitioner's claims. ECF No. 8 at 2.

#### 1. Ongoing *D.V.D.* Litigation Does Not Preclude Petitioner's Claims

Respondents argue in their Motion to Dismiss that any challenge to "ICE's third country removal procedures is precluded by *D.V.D.* . . ." ECF No. 8 at 2. The Court finds this argument unpersuasive, as many other judges in this District have previously found. *See, e.g.*, *Mendoza Palacios v. Mullin*, 829 F. Supp. 3d 67, 78 (D. Md. 2026) ("*D.V.D.* does not address a challenge to continued detention during a third-country review and therefore does not affect [petitioner]'s challenge of her continued detention pending any procedure for third-country removal."); *Portela-Hernandez v. Trump*, Civ. No. BAH-25-1633, 2026 WL 74042, at *10 (D. Md. Jan. 9, 2026) ("[A]bstaining from hearing [petitioner]'s challenge here would effectively preclude [him] from the relief he seeks entirely and potentially foreclose any relief that he could be entitled to as part of the *D.V.D.* class if he is removed before the class-wide claims are

resolved.") (internal citations omitted); *Santos Escobar v. Mullin*, Civ. No. GLR-26-1740, 2026 WL 1674825, at *5 (D. Md. June 10, 2026) (same). The Court will not dismiss the instant Petition on this ground.

**2. Count II: Third Country Removal**

For reasons explained below, the Court finds that Takletsadik is entitled, as a matter of due process, to a third country screening or fear interview and review of any negative determination by an IJ.

Noncitizens are unquestionably entitled to due process before they are removed from the United States. *See Trump v. J.G.G.*, 604 U.S. 670, 673 (2025); *United States v. Lopez-Collazo*, 824 F.3d 453, 460–61 (4th Cir. 2016). "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted). The Fourth Circuit has recognized that "if a noncitizen who has been granted withholding as to one country faces removal to an alternative country, then [ ]he must be given notice and an opportunity to request withholding of removal to that particular country." *Guzman Chavez v. Hott*, 940 F.3d 867, 879 (4th Cir. 2019), *rev'd on other grounds sub nom. Johnson v. Guzman Chavez*, 594 U.S. 523 (2021).

The question that the Court must answer is therefore "whether due process requires more than an interview and determination by a DHS asylum officer as to whether Petitioner is likely to be persecuted or tortured in [Cameroon]—and, specifically, whether due process requires giving Petitioner the option of review by an IJ." *Barrientos v. Baker*, Civ. No. MJM-26-0984, 2026 WL 1166361, at *3 (D. Md. Apr. 8, 2026). As many judges in this District have done before, the Court applies the three-part test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1974), to answer this question: "(1) the nature of the private interest that will be affected, (2) the comparative risk of an erroneous deprivation of that interest with and without additional or

substitute procedural safeguards, and (3) the nature and magnitude of any countervailing interest in not providing additional or substitute procedural requirements." *D.B. v. Cardall*, 826 F.3d 721, 742 (4th Cir. 2016) (citing *Turner v. Rogers*, 564 U.S. 431, 444–45 (2011)).

First, Takletsadik clearly "has an interest in not being removed to a country where he alleges he would face persecution or torture." *Cruz Medina v. Noem*, 806 F. Supp. 3d 536, 549 (D. Md. 2025). This interest enjoys protection through remedies established by acts of Congress and the Convention Against Torture, *see Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005), and "is precisely the type of interest that courts consistently have held is significant enough to justify procedural protections to ensure that individuals who are actually entitled to withholding of removal under [8 U.S.C.] § 1231(b)(3) or the Convention Against Torture receive such protection." *Cruz Medina*, 806 F. Supp. 3d at 549. (citations omitted).

Second, "'the comparative risk of an erroneous deprivation of that interest with and without additional or substitute procedural safeguards' favors requiring procedural safeguards beyond the determination by a single DHS asylum officer." *D.B.*, 826 F.3d at 742 (citation omitted). "[W]here a person alleges that he would be persecuted or tortured if removed to a particular country, a single review by an asylum officer creates an unacceptably high risk of erroneous deprivation." *Portela-Hernandez*, 2026 WL 74042, at *11 (quoting *Cruz Medina*, 806 F. Supp. 3d at 549) (noting that DHS regulations support this conclusion); *see also* 8 C.F.R. §§ 208.31(g), 1208.31(g) (providing IJ review of negative decisions by asylum officers in situations that do not apply to the instant case). This Court has been presented with no reason as to why a noncitizen in Petitioner's position is at "any lesser risk of erroneous deprivation . . . than in scenarios where DHS regulations contemplated the potential risk of erroneous deprivation of a noncitizen's liberty interest and determined to mandate review by an immigration judge." *Portela-Hernandez*, 2026 WL 74042, at *11 (quoting *Cruz Medina*, 806 F. Supp. 3d at 549).

Third, the Court must consider "the nature and magnitude of any countervailing interest in not providing additional or substitute procedural requirements[,]" *D.B.*, 826 F.3d at 742 (citation omitted), or, more specifically, "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail[,]" *Mathews*, 424 U.S. at 335. As has been recognized by this Court in an analogous case, "requiring [a] DHS asylum officer's negative decision to be reviewed de novo by an immigration judge would likely result in some delay and administrative burden, '[b]ut some delay and administrative burden is inherent in due process.'" *Barrientos*, 2026 WL 1166361, at *4 (citing *Cruz Medina*, 806 F. Supp. 3d at 551). The Court does not find the nature and magnitude of this interest to outweigh the other two factors, particularly given that such procedures already exist within the system. In other circumstances, DHS regulations have established a process for IJ review of negative fear determinations by asylum officers. *See* 8 C.F.R. §§ 1003.42(e), 1208.31(g).

The Court finds that, on balance, the *Mathews* factors weigh heavily in favor of requiring that Takletsadik receive a third country screening or fear interview by a DHS asylum officer with the opportunity to have a negative fear determination reviewed by an IJ. The Court will therefore enjoin the Respondents from removing Takletsadik from the United States without providing such process to him.

### 3. Count I: Indefinite Detention

Additionally, the Court finds that Takletsadik's continued detention violates the implicit limitation on post-removal order detention under 8 U.S.C. § 1231(a). *See Zadvydas*, 533 U.S. at 682; *Castaneda v. Perry*, 95 F.4th 750, 755–56 (4th Cir. 2024).

Detention under § 1231(a) is limited to a period reasonably necessary to bring about a noncitizen's removal from the United States. *Zadvydas*, 533 U.S. at 689. The Supreme Court adopted a six-month period of presumptively reasonable detention, *id.* at 700–01, but stated that the ultimate question that a "habeas court must ask [is] whether the detention in question

exceeds a period reasonably necessary to secure removal[,]" *id.* at 699. A court "should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal," and "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700.

Takletsadik has now spent approximately thirteen months in ICE detention since June 2025. Respondents initially detained him at that time without any reliable plan to remove him to a third country. *See Takletsadik*, 2026 WL 1883948, at *4–5. Now, Respondents announce their intention to remove Takletsadik, a 67-year-old man in poor health and in need of constant medical care, to Cameroon without giving him an opportunity to assert fear of removal to that country and to have any rejection of that assertion reviewed by an IJ.

The Court has already determined that Takletsadik cannot be removed to a third country unless and until Respondents provide him with a fear interview subject to IJ review, and because Respondents "do[] not believe the Constitution requires [this process] and will not provide this review," Takletsadik's removal to a third country is unlikely to occur in the reasonably foreseeable future. *Portela-Hernandez*, 2026 WL 74042, at *14; *see also* ECF No. 8-1 at 15 (summarizing ICE's March 30, 2025, Guidance). "The record before the Court, therefore, indicates that [Petitioner] faces 'indefinite and potentially permanent detention.'" *Portela-Hernandez*, 2026 WL 74042, at *14 (citing *Zadvydas*, 533 U.S. at 696). The Court will order Respondents to release Takletsadik from ICE custody immediately and will further enjoin Respondents from re-detaining Takletsadik until he is provided with a fear interview subject to IJ review. Given the fact that Takletsadik has already faced prolonged detention, these processes must both be completed before he may be detained again.

Because the Court will grant the Petition on Counts I and II, the Court declines to reach the merits of the remaining counts.

## III. CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part Respondents' Motion to Dismiss, and will grant the Petition as to Counts I and II. The Attorney General will be dismissed from this action. The remaining Respondents shall immediately release Takletsadik and are enjoined from re-detaining him until the process described in this Memorandum Opinion is provided. A separate Order will issue.

September 3, 2026
Date

/S/
Matthew J. Maddox
United States District Judge